# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BRIAN ROCK,

        Plaintiff,

vs.                              Case No.: 8:08-cv-00838-T-17-EAK-EAJ

SUNBELT CRANES, CONSTRUCTION
& HAULING, INC.,

        Defendants.

_____/

## <u>MEMORANDUM OPINION</u>

This civil action was tried before the Court, sitting without a jury, from July 6, 2009 to July 7, 2009. This Court, having heard testimony of the witnesses and argument of counsel, having reviewed the documentary evidence and exhibits, and having considered the parties' motions and memorandums of law, makes the following findings of fact and conclusions of law. For the reasons expressed in this Memorandum of Opinion, the Court finds in favor of the Defendant for the Plaintiff's unpaid, overtime compensation claim. The findings of fact as set forth below are based on the evidence submitted at the trial.

## I.      FINDINGS OF FACT

        The Plaintiff, Mr. Rock, began working for the Defendant, Sunbelt Cranes, Construction & Hauling, Inc. ("Sunbelt"), in May 1999. Mr. Rock's first position with Sunbelt was painting barges as an hourly employee. During the period in which Mr. Rock was an hourly employee at Sunbelt he received overtime pay for those hours he worked in excess of forty per week. On or about September 4, 2006, Mr. Rock was promoted to Dispatcher by Mitch McDonald and

continuously worked as such until he voluntarily terminated his employment on or about March 14, 2008. At the time of the promotion, Mr. Rock was made aware of, and did not have a problem with, receiving a salary for his position as Dispatcher. Mr. Rock recognized that accepting a salary position would end his overtime compensation. Mr. Rock did not attempt to negotiate a higher salary for his position as a Dispatcher. He felt that the salary of $55,000.00 was fair compensation.

Mr. Rock acknowledged that he knew he would be working in excess of forty hours per week, but he did not object to these hours of employment. The Plaintiff's primary job duties included customer communication, selecting and charting the proper cranes for specific jobs, assigning operators to certain cranes when necessary, overseeing other employees, preparation and review of job tickets, and maintaining Sunbelt's schedule. Mr. Rock's job responsibilities required him to use his discretion and independent judgment when determining such things as the appropriate crane for a particular job by considering information not reflected in the crane charts. These job duties are common for a dispatcher in the crane rental industry, and Mr. Rock's compensation for such is also in line with other crane rental companies. The standard and custom in the crane rental industry is for dispatchers to be compensated by salary.

## II.    CONCLUSIONS OF LAW

This action consists of Plaintiff's claim against Defendant, Sunbelt, for unpaid, overtime compensation and liquidated damages pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et. seq.* ("FLSA"), for the time period that he was employed by Sunbelt as a Dispatcher. Sunbelt asserts that the Plaintiff's job duties satisfy an exemption for executive and/or administrative employees under the FLSA. The jurisdiction of this Court is

based on original jurisdiction over Plaintiff's claim arising under the FLSA pursuant to 28

U.S.C. § 1331.

The below conclusions of law first address the parties' oral trial motions and second the

parties' claims and defenses.

## A. CONCLUSIONS OF LAW ON PARTIES' ORAL TRIAL MOTIONS

### i. Defendant's Oral Motion for Judgment as a Matter of Law

This matter is before the Court pursuant to Defendant, Sunbelt's, oral trial Motion for

Judgment as a Matter of Law. The Defendant made this motion under the Federal Rule of Civil

Procedure 52(c), which provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds
> against the party on that issue, the court may enter judgment against the party on a claim
> or defense that, under the controlling law, can be maintained or defeated only with a
> favorable finding on that issue. The court may, however, decline to render any judgment
> until the close of the evidence. A judgment on partial findings must be supported by
> findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c). The Defendant argues that the Plaintiff has not satisfied its burden of proof

to demonstrate that he worked compensable hours for which he was not properly compensated.


At trial, the Court deferred ruling on Defendant's Motion. The Defendant's Motion for

Judgment as a Matter of Law is rendered moot by the Court's current ruling in favor of the

Defendant.  Therefore, the Court does not consider this motion here.

### ii. Plaintiff's Oral Motion to Limit Testimony of Defendant Witness Richard

### Ferchak

This matter is before the Court pursuant to Plaintiff, Mr. Rock's, oral trial motion to limit the

testimony of Defendant's witness, Mr. Ferchak, to the time period that Ray Anthony,

International, LLC acquired Sunbelt. At trial, the Court deferred ruling on the Plaintiff's motion.

Federal Rules of Evidence 401 defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than if would be without the evidence." Fed. R. Evid. 401.

The Plaintiff seeks to limit Mr. Ferchak's testimony to the time that Ray Anthony, International acquired Sunbelt. Ray Anthony, International purchased Sunbelt in July of 2007. At or around the time of Ray Anthony, International's purchase of Sunbelt is the moment when Mr. Ferchak became Sunbelt's Chief Operating Officer. Mr. Ferchak's testimony indicates that in his capacity as Sunbelt's Chief Operating Officer he supervised the Plaintiff on a daily basis. However, any testimony that Mr. Ferchak gave as to the time period prior to Ray Anthony, International's acquisition of Sunbelt is also relevant as to what he believed were the crane rental industry's standards. Mr. Ferchak's testimony clearly indicates the extent of his first-hand knowledge of Mr. Rock's employment. It is for this Court, as the trier of fact, to determine the weight and credibility to be given to Mr. Ferchak's testimony.

Accordingly, the Plaintiff's motion to limit Mr. Ferchak's testimony to the time period in which Ray Anthony, International purchased Sunbelt is **DENIED.**

### B. CONCLUSIONS OF LAW ON PARTIES' ORIGINAL CLAIMS AND DEFENSES

In determining whether the Plaintiff in this case meets the executive and/or administrative exemption of the FLSA, the Court must consider the totality of the Plaintiff's responsibilities. The Plaintiff's primary duties were disputed by the parties at trial, with Sunbelt contending that the Plaintiff was part of management, supervised several other employees of Sunbelt, and exercised significant discretion and independent judgment in carrying out his duties, whereas the Plaintiff's testimony at trial alleged that his responsibilities were "akin to working on a

manufacturing production line or selling a product in a retail or service establishment." (Docket No. 69, p. 27); *see* 29 C.F.R. § 541.210(a).

### i. FLSA Requirements

The FLSA requires an employer to pay its employees overtime compensation of at least one-and-one-half the usual rate of pay if an employee works more than forty hours in a workweek. 29 C.F.R. § 207(a)(1). It is clear from the evidence introduced at trial that Mr. Rock worked in excess of forty hours per workweek. As such, Section 207 requires that Sunbelt compensate Mr. Rock by paying him one-and-one-half times his regular rate at which he was employed. *Id.* However, employees working in several categories, which are enumerated in the FLSA, are exempt from the statute's overtime provisions. *See* 29 C.F.R. § 213. For example, Section 213(a)(1) provides that Section 207 shall not apply with respect to any employee employed in a bona fide executive, administrative, or professional capacity. 29 U.S.C. § 213(a)(1). Sunbelt contends that Mr. Rock is exempt from overtime compensation pursuant to this provision.

Under the FLSA, the Secretary of Labor has the authority to promulgate regulations under Section 213 and has exercised such authority.

### ii. FLSA Exemptions

#### 1. Executive Capacity Exemption

The general rule for employment in a bona fide executive capacity is located at 29 C.F.R. § 541.100 and provides as follows:

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100. The parties do not dispute that Mr. Rock was paid on a salary basis of not less than $455 per week, thus, satisfying the first element of the executive capacity exemption.

The Defendant, Sunbelt, still has the burden of establishing the remaining three elements. *See Birdwell v. City of Gadsden,* 970 F.2d 802, 805 (11th Cir. 1992) (stating that the employer bears the burden of proving the applicability of an exemption to Section 207 by "clear and affirmative evidence"). The second element that Sunbelt must prove in order to establish an executive capacity exemption to overtime compensation is that Mr. Rock's primary duty was management of the enterprise in which he was employed or of a customarily recognized department or subdivision of the enterprise. 29 C.F.R. § 541.100(a)(2). The Secretary of Labor has defined management to generally include, but not be limited to, some of the following activities:

". . . directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status . . . planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked, or sold . . ."

29 C.F.R. § 541.102. While it is clear that Mr. Rock did not have the primary duty of management over Sunbelt entirely, the evidence suggests that Mr. Rock did have the primary duty of management over the crane rental division of Sunbelt. Sunbelt had several customarily recognized departments and/or subdivisions, one of which was its crane rental department. Section 541.103 states that the "phrase 'customarily recognized department or subdivision' is

intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function." 29 C.F.R. § 541.103. The crane rental department was described at trial as the heart of Sunbelt's business. This department was not of a temporary nature. It had a permanent status within Sunbelt's business and a continuing and permanent function. As the sole Dispatcher for Sunbelt's crane rental department, Mr. Rock's primary responsibility was to manage this department and ensure that it was run properly and efficiently. Specifically, Mr. Rock was responsible for directing the work of employees by selecting which employees to send with the cranes for particular jobs. Additionally, Mr. Rock determined the type of materials, supplies, machinery, equipment or tools to be used with the cranes in order to fulfill the customers' needs. These responsibilities, in combination with Mr. Rock's other responsibilities, constitute his principal duties. After considering evidence regarding the amount of time Mr. Rock spent on these exempt managerial duties, it is determined that Mr. Rock's primary duty in accordance with 29 C.F.R. § 541.700 was the "management" of Sunbelt's crane rental division.

The third element that Sunbelt must prove is that Mr. Rock regularly directed the work of two or more other employees. 29 C.F.R. § 541.100(a)(3). The FLSA regulations indicate that in order for Mr. Rock to satisfy this element of the executive capacity exemption he must have supervised at least two or more full-time employees or the equivalent. *See* 29 C.F.R. § 541.104. Testimony at trial indicated that Mr. Rock was responsible for directing employees and ensuring that the customers were satisfied with the employees' performance by way of verifying the job tickets. Mr. Rock was also responsible for deciding which employees to send to specific customers' jobs based on the employees' performance and reliability. Additionally, Mr. Rock had the authority to hire on additional employees as needed and/or send home those employees

that were not needed on a day-to-day basis. There was sufficient evidence to establish that it is common industry standard for dispatchers to directly supervise the crane operators and any other employees that are necessary to operate the cranes properly and efficiently, such as riggers, oilers, and drivers. Even though Mr. Rock did not accompany his employees to the customers' job locations, he was responsible for making sure that things ran smoothly. If a piece of equipment broke down, it was Mr. Rock's responsibility to find another suitable piece of equipment for that customer or to direct the employees on how to handle the situation. Mr. Rock was the first line of communication between the company and the customers if there was a problem with a job. While Mr. Rock was not at the top of the chain of command, there is sufficient evidence to show that he directly supervised two or more full-time employees, thus, satisfying the third element of the executive capacity exemption.

The final element that Sunbelt must prove is that Mr. Rock had the authority to hire or fire other employees, or that Mr. Rock's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight. 29 C.F.R. § 541.100(a)(4). The FLSA regulations give a list of factors to consider when determining whether this element of the executive capacity exemption has been satisfied. These factors are not exhaustive, and they include "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Mr. Rock's suggestions and recommendations can still be considered to have "particular weight" even if he did not have the authority to make the ultimate decision with regards to a particular employee. *Id.*

While Mitch McDonald, the Plaintiff's own witness, testified that he sought Mr. Rock's suggestions and recommendations with regards to the promotion of certain employees, this was not a considerable part of the Plaintiff's job duties. Further, Mr. Rock's authority with regards to the hiring and firing of employees was limited to only those employees that he directed in Sunbelt's crane rental department. Mr. Rock did not exercise this authority to hire and/or fire any of Sunbelt's employees at any time during his employment with Sunbelt. The factors provided in the regulations to help determine whether the elements for the executive exemption have been satisfied include the frequency of performing certain tasks. Here, the infrequency with which Mr. Rock exercised his authority to hire and fire employees suggests that he does not satisfy this final element. Accordingly, the Defendant is unable to clearly establish that Mr. Rock was an executive pursuant to the FLSA exemptions.

## 2. Administrative Capacity Exemption

The determination of whether an employee is exempt under the FLSA is a fact intensive inquiry. The Department of Labor's regulations set forth a test to help determine whether an employee qualifies for one of the exemptions. The test for determining whether the Plaintiff qualifies for the administrative exemption has two requirements: "(1) the employee must be paid at least $455 per week, and (2) the employee's primary duties must include: 'the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and . . . the exercise of discretion and independent judgment with respect to matters of significance.'" 29 C.F.R. § 541.200. The parties here do not dispute that Mr. Rock was paid on a salary basis of not less than $455 per week, thus, satisfying the first element of the administrative exemption. The Plaintiff contends, however, that his responsibilities as a Dispatcher do not meet the remaining requirements of the administrative

exemption test. Sunbelt maintains the burden of establishing the two remaining elements. *See Birdwell v. City of Gadsden,* 970 F.2d 802, 805 (11th Cir. 1992) (stating that the employer bears the burden of proving the applicability of an exemption to Section 207 by "clear and affirmative evidence").

The remaining elements that Sunbelt must prove in order to establish an administrative capacity exemption to overtime compensation is that Mr. Rock's primary duties were the performance of office or non-manual work directly related to the general business operations of Sunbelt or its customers, and that he exercised discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a)(2). Several courts have found dispatchers to be exempt under the administrative exemption, but they have done so only after a finding that the employee exercised considerable discretion and supervisory authority. *Iaria v. Metro Fuel Oil Corp.,* 2009 WL 222373, at *3 (E.D.N.Y. 2009) (citing as examples *LaPoint, Inc. v. CRST Intern., Inc.,* 2004 WL 3105950, at *9 (N.D. Iowa June 16, 2004) (finding that dispatcher had "authority to discipline other employees" and was "in charge during his work hours"); *Mooney v. Preston Trucking Co.,* 215 F. Supp. 568, 572 (D.N.J. 1963) (finding that dispatcher "was in charge" of defendant's delivery service and had the authority to initiate disciplinary action, to suspend drivers, to cause drivers to be discharged, and to approve overtime pay); *Mitchell v. Branch Motor Express Co.,* 168 F. Supp. 72, 74–75 (E.D. Pa. 1958) (dispatcher exercised discretion and independent judgment in disciplining, suspending, and recommending for discharge drivers and other employees and was "in complete charge of the operation"); *McComb v. N.Y. & New Brunswick Auto Exp. Co.,* 95 F. Supp. 636, 640 (D. N.J. 1950) (dispatchers were "completely in charge of the operation phase of the defendant's business" with "complete authority and discretion," including authority to hire and discharge employees).

The first prong of the duties requirement is that Mr. Rock's work be directly related to the management or general business operations of the employer or its customers. This requirement can be satisfied by the employee performing work directly related to the running or servicing of the business. *See* 29 C.F.R. § 541.201(a). This requirement will not be satisfied by a mere showing that the Plaintiff's responsibilities were equivalent to working on a manufacturing production line or selling products in a retail store. *Id.* The regulations provide a non-exhaustive list of administrative tasks that are exempt from the overtime provisions of the FLSA. This list includes work in such areas as tax, accounting, budgeting, purchasing, advertising, marketing, personnel management, human resources, and computer networks. *Id.* at § 541.201(b). These examples are all clearly related to the servicing or running of the Defendant's business itself. In other words, the Defendant's business could not function properly without its employees that perform these tasks. *Neary v. Metro. Prop. & Cas. Ins. Co.,* 517 F. Supp. 2d 606, 614 (D. Conn. 2007).

Similarly Sunbelt's business could not operate properly without its dispatch department. While the particular dispatch department referred to here is unique to crane rental businesses and may not be the sort of department that *every* business needs to function properly, it is of the sort that a crane rental business *must* have in order to function. The regulation mentioned above does not give an exhaustive list of exempt administrative tasks that an employee could perform. In fact it only names a few. *Iaria,* 2009 WL 222373, at *3. As the head of Sunbelt's dispatch department, Mr. Rock was responsible for maintaining one of the most important aspects of the Defendant's business; its schedule, without which Sunbelt could not function properly. Maintenance of the schedule and Mr. Rock's other responsibilities combined were necessary and of the type that every crane rental business must undertake in order to operate. Therefore, the

Defendant has clearly established that the Plaintiff's primary duties were directly related to the servicing or running of Sunbelt's general business operations.

The second prong of the duties requirement to satisfy the administrative employee exemption is that the employee must exercise "discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2). The phrase "matters of significance" is further defined by the regulations to refer to the level of importance or consequence of the work performed. *Id.* at § 541.202(a). Additionally, the regulations require that the "exercise of discretion and independent judgment be more than the use of skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources." *Id.* at § 541.200(e).

The Department of Labor (DOL) has an operations manual that provides interpretations of statutory provisions and general administrative guidance. *Iaria,* 2009 WL 222373, at *4, n. 5. These interpretations are entitled to considerable weight. *See Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 844–845 (1984). The DOL Field Operations Handbook provides specific guidance in evaluating whether a dispatcher's duties meet the FLSA's administrative exemption. *Iaria,* 2009 WL 222373, at *4. The Handbook notes that "'where the company does not operate over regular routes, or where there is a choice between using the company's own trucks or a contract carrier's trucks or where dispatchers handle emergency situations, there may be the exercise of discretion and independent judgment' sufficient to satisfy the administrative exemption requirements." *Id.*; DOL Field Operations Handbook § 22d04(b).

The Defendant put on significant evidence as to the daily responsibilities of a crane dispatcher. While some daily tasks require the dispatcher to use only personal knowledge and skill, many other tasks necessitate the dispatcher's discretion and independent judgment. The

dispatcher is responsible for directing and overseeing all operators, truck drivers, riggers, oilers, and erection crews. Encompassed in this responsibility is the dispatcher's exercise of discretion as to which customers' jobs each employee should be assigned and what equipment is required to perform the job properly. The dispatcher's discretion is used in determining which employees to send, and where to send them, based on the employees' experience and reliability. Further, because the Defendant's company does not operate over assigned routes, Mr. Rock was responsible for using his independent judgment to determine how the cranes and additional equipment were to arrive at the customer's job site in a safe and timely fashion. If an emergency were to arise, Mr. Rock was the first line of communication, and he was required to use his best judgment and discretion to resolve the conflict and ensure that the customer's needs were being met despite such emergency. Mr. Rock was not required to seek approval or input from anyone else prior to making these decisions.

According to the Defendant's evidence, Mr. Rock had the ability and the discretion within the crane rental department to hire extra employees when necessary or to terminate those found to be unnecessary. As mentioned above, Mr. Rock did not exercise such authority; however, the evidence suggests that he had the discretion and ability to use his independent judgment regarding the amount of employees necessary on any given day to run the crane rental department smoothly. Furthermore, Mr. Rock was required to maintain the company's schedule and to determine which jobs could be completed within the company's time restraints and which jobs, if any, would have to be turned away. Mr. Rock's performance of these tasks clearly evidences "more than the use of skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources." 29 C.F.R. at § 541.200(e).

The final element that the Defendant needs to prove is that Mr. Rock's discretion and independent judgment was used with respect to matters of significance. *Id.* at § 541.202(a). The important consideration with regards to this element is the level of importance or consequence of the work Mr. Rock performed. The parties do not dispute that Sunbelt could not operate its crane rental business without its dispatch department. Furthermore, the dispatch department could not operate without Mr. Rock, its Dispatcher. The consequences of Mr. Rock's performance are directly related to the overall success of Sunbelt's crane rental business. Thus, there is a high level of importance in the work Mr. Rock performed on a daily basis. Without the Dispatcher's ability to exercise discretion and independent judgment in the operations of the crane rental business, Sunbelt would not be able to function properly. As such, Mr. Rock's performance and exercise of discretion and independent judgment is directly related to matters of great significance to Sunbelt and its crane rental operation.

Even though, as the Plaintiff points out in its Proposed Findings of Fact and Conclusions of Law (Docket No. 69), the regulation that provided a specific exemption for traffic managers has been revised and is no longer in effect, that regulation provided only *examples* of exempt administrative positions. The current regulation also provides several examples of positions that will be considered exempt administrative positions. *See* 29 C.F.R. § 541.203. The regulation provides that an "administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance." *Id.* at § 541.203(d).

Here, Mr. Rock was clearly an administrative assistant to the owner of Sunbelt and Sunbelt's other executives. Additionally, Mr. Rock was given specific authority to run the entire

crane dispatch department of Sunbelt. There were crane rental manuals in place to assist Mr. Rock in his duties as dispatcher; however, he was given the broad authority to use his own discretion and judgment with respect to matters of great significance to Sunbelt's business operations. Mr. Rock was not instructed on what questions to ask or what information to obtain from the inquiring customers. Mr. Rock was also not instructed on which employees or what equipment was to be dispatched to any given job. In an emergency, Mr. Rock was not required to seek approval before adjusting the methods and/or equipment needed to complete a customer's job. Simply because the language "traffic manager" was not used in the revised regulations does not alone support the plaintiff's position that a dispatcher is not an exempt administrative employee under the FLSA.

According to the evidence presented at trial, the Defendant has satisfied all necessary elements of the FLSA's administrative exemption, and the Plaintiff comes within a recognized example of an administrative position.

### iii. Liquidated Damages

Upon finding that an employer violated the FLSA overtime compensation provision, a district court must award a plaintiff liquidated damages that are equal in amount to actual damages pursuant to Section 216(b) of the FLSA. *Rodriguez v. Farm Stores Grocery, Inc.,* 518 F. 3d 1259 (11th Cir. 2008). Here, the Court finds that the Plaintiff was exempt from the overtime compensation requirements of the FLSA by way of the administrative employee exemption. As such, the Plaintiff's claim for liquidated damages is **DENIED**. Accordingly, it is

**ORDERED** that Defendant's Motion for Judgment as a Matter of Law (Docket No. 53) be **DENIED**; Plaintiff's Motion for miscellaneous relief, specifically to limit testimony of Defendant Witness Richard Ferchak (Docket No. 57) be **DENIED**; and the Clerk of the Court be

**DIRECTED** to enter judgment in favor of the Defendant and against the Plaintiff, on the Plaintiff's claim for unpaid, overtime compensation and liquidated damages. The Clerk of the Court is further **DIRECTED** to close this case.

  **DONE AND ORDERED** in Chambers, in Tampa, Florida, this 26th day of October, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.